UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AVALON HOLDINGS CORPORATION<br>One American Way<br>Warren, Ohio 44484 | )<br>)<br>) | CASE NO.:<br><br>JUDGE: |
| Plaintiff, | ) | |
| vs. | ) | |
| SHIVA Y. STEIN<br>291 Union Street, Apartment 5E<br>Brooklyn, New York 11231-4479 | )<br>)<br>) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Avalon Holdings Corporation, for its Complaint for Declaratory Judgment against Defendant Shiva Y. Stein, states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Avalon Holdings Corporation ("Avalon") is a corporation organized and existing under the laws of the State of Ohio with its principal place of business located at One American Way, Warren, Ohio 44484. Avalon is a publicly traded company that is traded on the NYSE Amex Exchange.

2. Avalon is a controlled corporation with beneficial ownership of Sixty-Seven Percent (67%) of its voting power held by the management of Avalon in the person of Ronald E. Klingle who is the Chairman of the Avalon Board of Directors and Avalon's Chief Executive Officer.

3. Defendant Shiva Y. Stein ("Stein") is an individual residing at 291 Union Street,

Apartment 5E, Brooklyn, New York 11231-4479. Stein alleges that she is a beneficial minority owner of Avalon common stock.

4. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 2201, and 2202 and 15 U.S.C. § 78aa, as this is an action for declaratory judgment arising under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a).

5. Under 28 U.S.C. §§ 2201-2202, a current, actual, and justiciable controversy exists between Avalon and Stein concerning Stein's rights and remedies pursuant to Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), making a declaratory judgment appropriate. Pursuant to Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa(a), the "district courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder."

6. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between Avalon and Stein and the amount in controversy exceeds the sum or value of $75,000.

7. Venue is proper in this judicial district under 28 U.S.C. § 1391 due to, among other reasons, a substantial part of the events or omissions giving rise to the dispute between Avalon and Stein occurred in this judicial district. Venue is further proper in this judicial district pursuant to Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa(a), as this judicial district is a district where an act or transaction constituting the alleged violation of Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), occurred; Avalon resides in and transacts business in this district; and Stein has transacted business in this district.

2

8. Stein is subject to the personal jurisdiction of this Court because, as a purported beneficial minority owner of common stock of Avalon and by her actions in the underlying dispute, she has transacted business with an Ohio corporation. In addition, Stein is subject to the personal jurisdiction of this Court pursuant to the nationwide service of process provided by Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa(a), which confers personal jurisdiction in any district court over any defendant with minimum contacts to the United States.

## FACTUAL BACKGROUND

9. Avalon's annual meeting of its shareholders was scheduled to occur on April 25, 2019, at The Avalon Inn, located at 9519 East Market Street, Warren, Ohio (the "Annual Meeting"). In advance of that Annual Meeting, Avalon prepared and filed with the Securities and Exchange Commission a Proxy Statement (the "Proxy Statement"). A true and accurate copy of the Proxy Statement is attached hereto as Exhibit A.

10. The Proxy Statement was furnished in connection with the solicitation by Avalon's Board of Directors of proxies in the form attached to the Proxy Statement. The Proxy Statement was provided to all holders of issued and outstanding shares of Class A Common Stock and Class B Common Stock who were entitled to vote at the Annual Meeting. Among other things, the Proxy Statement furnished those voting shareholders with information on the matters that were set for vote at the Annual Meeting. The shareholders were encouraged to fill out and return the attached proxies thereby instructing the appointed proxies to vote their respective shares, as directed by the respective shareholders, on the matters set for vote at the Annual Meeting.

11. One of the matters scheduled for a vote at the Annual Meeting was approval of the Avalon Holdings Corporation 2019 Long-Term Incentive Plan for its salaried employees (the

3

"2019 Long-Term Incentive Plan"). Pursuant to Avalon's Articles of Incorporation, the approval of the 2019 Long-Term Incentive Plan was subject to a vote of the holders of Avalon's Class A Common Stock and Class B Common Stock, voting as a single class, with each share of Class A Common Stock having one (1) vote and each share of Class B Common Stock having ten (10) votes. *See* Proxy Statement at p. 2. The Proxy Statement included a description of the material features of the 2019 Long-Term Incentive Plan, identified the classes of persons entitled to participate in the Plan, and explained that participation in the Plan would be determined by the Option Plan Committee. In addition, the text of the 2019 Long-Term Incentive Plan was attached as an Appendix to the Proxy Statement for the shareholders' review and consideration.

12. The Board of Directors of Avalon, including the Chairman of its Board, Ronald E. Klingle, who beneficially owns Sixty-Seven Percent (67%) of Avalon's voting power, unanimously recommended approval of the 2019 Long-Term Incentive Plan. Mr. Klingle was prepared to and intended to vote in favor of the 2019 Long-Term Incentive Plan at the Annual Meeting. Given his support of the 2019 Long-Term Incentive Plan and that the Plan required only one vote more than Fifty Percent (50%) of the votes cast at the Annual Meeting to pass, sufficient votes were in place to approve the measure based on Mr. Klingle's vote alone.

13. In response to the Proxy Statement, the Board of Directors of Avalon received a letter (the "Original Demand Letter") at Avalon's Warren, Ohio headquarters from a New York City law firm purporting to represent Stein who was alleged to be the beneficial owner of a minority of the common stock in Avalon. The Original Demand Letter, which was dated March 29, 2019, alleged that the Proxy Statement violated Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), because it failed to include information on the 2019 Long-Term Incentive Plan that was allegedly required by Securities and Exchange Commission rules and

4

regulations; namely the number of salaried employees who would be eligible to participate in the Plan. A true and accurate copy of the Original Demand Letter is attached hereto as <u>Exhibit B</u>.

14. The Original Demand Letter alleged that the Proxy Statement was "unlawful under § 14(a) of the Securities Exchange Act of 1934 . . . and must be corrected in advance of the annual meeting of Avalon shareholders." It further threatened that a failure to correct the Proxy Statement "may very well subject [Avalon] to liability and make any grants under the 2019 Plan void *ab initio*" and warned that Stein "may seek an injunction to prevent a vote of Avalon stockholders on [the 2019 Long-Term Incentive Plan], an injunction requiring [Avalon] to correct the 2019 Plan and/or prohibit awards pursuant to the 2019 Plan and such other and further relief as may be deemed appropriate."

15. On or about April 3, 2019, corporate counsel for Avalon called the attorney who had written the Original Demand Letter, consistent with her request to "[p]lease contact [her] immediately to discuss this matter" and left a voicemail message because the call was not answered. Shortly following that attempted call, corporate counsel received a call from Juan Monteverde, an attorney who, on information and belief, is associated with a New York City law firm separate from the firm which wrote the Original Demand Letter but who is copied on that Original Demand Letter. REDACTED
REDACTED

16. This is not the first time that Stein, through various New York law firms, has threatened similar legal action against publicly-traded companies based on purported violations of Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), in connection with proxy statements circulated in advance of shareholder votes. For example, and representing only the tip of the iceberg, Stein has filed thirty-four (34) lawsuits since 2016 in the United States

5

District Court for the Eastern District of New York—her home district—against different publicly-traded companies complaining of deficiencies in proxy statements and seeking to enjoin or invalidate shareholder votes because of same. *See* a list of such lawsuits attached as <u>Exhibit C</u>.

17. REDACTED

REDACTED

18. Due to Avalon being a controlled corporation with the majority of its voting power controlled by Mr. Klingle, Stein's threats and purported claims under Section 14(a) of the Securities Exchange Act of 1934 were baseless. Under *Virginia Bankshares v. Sandberg*, 501 U.S. 1083 (1991) ("*Virginia Bankshares*"), and its progeny, Stein—whose vote as a purported minority beneficial owner in Avalon was <u>not</u> required to approve the 2019 Long-Term Incentive Plan—would be unable to prove the required causation under Section 14(a). In other words, based on *Virginia Bankshares* and in the context of a controlled corporation such as Avalon, an alleged minority beneficial owner like Stein would not have a viable claim under Section 14(a) because she could not establish, as a matter of law, the required element of causation.

19. Under no circumstances, then, would Stein, in light of *Virginia Bankshares*, have been entitled to damages or injunctive relief under Section 14(a) or to subsequently invalidate the 2019 Long-Term Incentive Plan for any purported violation of Section 14(a). Mr. Klingle, the controlling shareholder, was aware of all material information concerning the 2019 Long-Term Incentive Plan, including the number of salaried employees who could participate, and intended

6

to vote in favor of the Plan and indeed, as Chairman of Avalon's Board of Directors, had already voted as part of the Board in favor of it and was recommending to the other shareholders that they vote for it as well at the Annual Meeting.

20. Nonetheless, out of concern that Stein would frivolously seek to enjoin and thereby delay the Annual Meeting or would engage in a meritless attempt to subsequently invalidate the vote on the 2019 Long-Term Incentive Plan—forcing Avalon to defend against a lawsuit likely in a state outside of Ohio in which it is not located and does not do business— Avalon supplemented the Proxy Statement to include the information demanded by Stein. A true and accurate copy of the Supplemental Proxy Statement is attached hereto as <u>Exhibit D</u> (the "Supplemental Proxy Statement").

21. The Supplemental Proxy Statement served to head off a baseless injunction action from Stein thereby allowing the Annual Meeting to occur as scheduled and for the matters scheduled then for vote to proceed. It also served to prevent Stein from seeking to invalidate approval of the 2019 Long-Term Incentive Plan based on any Section 14(a) violation in connection with the original Proxy Statement—however meritless such a claim would have been in the context of a controlled corporation under *Virginia Bankshares*.

22. As a result, the Annual Meeting went forward as scheduled on April 25, 2019. Not unexpectedly, given Mr. Klingle's support as the controlling shareholder, the 2019 Long-Term Incentive Plan passed with the approval of over a majority of the votes cast. Mr. Klingle voted in favor.

23. REDACTED

REDACTED

# REDACTED

24. REDACTED

# REDACTED

25. REDACTED

# REDACTED

**REDACTED**

## COUNT I
### DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. §§ 2201-2202

26. Avalon incorporates paragraphs 1-25 as if fully set forth herein.

27. Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, in cases of actual controversy within its jurisdiction, the district court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

28. A current, actual, and justiciable controversy exists between Avalon and Stein concerning whether Stein had a viable claim for violation of Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), in connection with the original Proxy Statement entitling her to recovery of her attorney fees pursuant to *Mills v. The Electric Auto-Lite Company*, 396 U.S. 375 (1970) ("*Mills*") and *Virginia Bankshares v. Sandberg*, 501 U.S. 1083 (1991) ("*Virginia Bankshares*").

29. Avalon avers that Stein could not have succeeded under her claim of violation of Section 14(a) given that Avalon is a controlled corporation and its controlling shareholder approved the 2019 Long-Term Incentive Plan. Therefore, Stein did not provide a substantial benefit to Avalon entitling her to the recovery of attorney fees pursuant to *Mills* and *Virginia Bankshares*. In fact, *Mills* is inapposite to the facts of this case inasmuch as that case did not involve a controlled corporation like Avalon. Rather, under *Virginia Bankshares* and in the

9

context of a controlled corporation, Stein did not have a viable Section 14(a) claim which could give rise to a valid claim for attorney fees.

30. Avalon requests entry of a judgment declaring that Stein is not entitled to attorney fees pursuant to *Mills* and *Virginia Bankshares*, because she provided no substantial benefit to Avalon through her meritless Section 14(a) claim. Indeed, Stein's actions have resulted in nothing but unnecessary expense to Avalon.

WHEREFORE, Avalon requests a judgment declaring Stein provided no substantial benefit to Avalon and is not entitled to her attorney fees pursuant to *Mills v. The Electric Auto-Lite Company*, 396 U.S. 375 (1970) and *Virginia Bankshares v. Sandberg*, 501 U.S. 1083 (1991), and such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Lisa S. DelGrosso
Lisa S. DelGrosso (0064938)
ldelgrosso@brouse.com
Christopher T. Teodosio (0089316)
cteodosio@brouse.com
BROUSE McDOWELL
388 South Main Street, Suite 500
Akron, Ohio 44311
Phone: (330) 535-5711
Fax: (330) 253-8601

*Attorneys for Plaintiff Avalon Holdings Corporation*

[1061233]